## DECLARATION IN SUPPORT OF VERIFIED COMPLAINT

Under 28 U.S.C. § 1746, I, Amber Luker, a Special Agent with the United States Internal Revenue Service ("IRS"), make the following unsworn declaration, under the penalty of perjury, in support of the Verified Complaint to which this declaration is attached:

## AGENT BACKGROUND AND INTRODUCTION

1. This declaration is made in support of a Verified Civil Complaint to forfeiture the proceeds of a fraudulent scheme to obtain funds through the refundable Employee Retention Tax Credit ("ERC") and Qualified Sick and Family Leave Credit ("SFLC"). These refundable federal tax credits were authorized under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and extended under the American Rescue Plan for businesses that continued to pay employees while shut down or had significant declines in gross revenue due to the COVID-19 global pandemic and paid employees sick and family leave during COVID-19. As explained below, there is probable cause to believe that the Defendant Property constitutes the undissipated remainder of significant fraud proceeds obtained through the commission of a mail fraud scheme by causing the IRS to issue fraudulent tax refund checks due to her falsely filed Forms 941 Employer's Quarterly Federal Tax Return ("Form 941"). The United States now seeks to recover these funds seized from the two bank accounts into which the fraud proceeds had been traced.

2. I have been a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI") since November 2018. I am assigned to the Atlanta Field Office. I graduated from Western Governor's University with a Bachelor of Science degree in Accounting. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia and of the IRS-CI Special Agent Investigative Techniques program at the National Criminal Investigation Training Academy at FLETC. In these last two programs, I

1



studied a variety of law enforcement, criminal investigator, and tax crime issues, including search and seizure, violations of the Internal Revenue laws, and Internal Revenue Service procedures and policies in criminal investigations. I have also received extensive on-the-job training. Prior to becoming a Special Agent, I was a Tax Fraud Investigative Assistant ("TFIA") with IRS-CI for nine years. As a TFIA, I assisted IRS-CI Special Agents in their investigations, to include planning and preparation of search warrants. My responsibilities as a Special Agent include the investigation of criminal violations of Internal Revenue laws (26 U.S.C. § 1, *et seq*.), money laundering laws (18 U.S.C. §§ 1956 and 1957), Bank Secrecy Act and (31 U.S.C. §§ 5311-5314 and 5316-5336), and related offenses. I have personally participated in the planning, preparation, and execution of numerous search warrants.

3.      I am investigating allegations that CHERA HARPER ("HARPER") electronically filed seven false Forms 941 for her business, PROGRESSIVE TAX PREPARATIONS ("PTP") with the IRS, which caused the mailing of seven fraudulent U.S. Treasury refund checks in violation of 18 U.S.C. §§ 1341 and 1349 for the 2020 and 2021 tax years. The tax returns claimed fictitious ERC and SFLC. Further, HARPER conducted monetary transactions of more than $10,000 with the proceeds of the underlying mail fraud in violation of 18 U.S.C. §§ 1956 and 1957. HARPER deposited the fraudulently obtained refund checks she received into bank accounts she owns and controls. HARPER subsequently withdrew funds from one account, deposited those funds into another account, and purchased a $50,000 Certificate of Deposit with some of the proceeds. HARPER primarily used two checking accounts at Cadence Bank to deposit the fraudulently obtained refund checks and conduct the money laundering transactions.

4.      Based on my training and experience, coupled with my personal knowledge of the facts of the investigation to which this declaration relates, I respectfully submit that there is probable cause to believe that the Defendant Property, seized pursuant to a federal seizure

**EXHIBIT A**

warrant from the financial accounts detailed below and held by HARPER at Cadence Bank, constitute criminally derived property. HARPER deposited more than $1.3 million into two bank accounts held at a Cadence Bank branch located in the Southern District of Mississippi. The deposits consisted of U.S. Treasury refund checks made payable to HARPER and PTP and were delivered to HARPER by the United States Postal Service ("USPS") in the Southern District of Mississippi.

5. Unless otherwise stated, all the information contained in this declaration is derived from personal knowledge and observations, interviews of witnesses, other law enforcement agencies, and/or is based on a review of various documents and records more particularly described herein. This information is believed to be both truthful and reliable. This declaration contains only information sufficient to demonstrate my reasonable belief that the government can meet its burden of proof at trial and does not include every fact and matter observed by or made known to agents of the government.

### ITEMS TO BE FORFEITED TO THE UNITED STATES OF AMERICAN

6. The Defendant Property includes the following assets:

| Asset ID | Property Description |
|---|---|
| 24-IRS-000386 | $19,471.87 seized from Cadence Bank Checking Account Number x3215 held in the name of CHERA L. HARPER ("**BANK ACCOUNT #1**") with the address on the account of 1960 N. Frontage Rd, Clinton, Mississippi |
| 24-IRS-000387 | $2,052.82 seized from Cadence Bank Checking Account Number x7220 held in the name of CHERA L. HARPER DBA PROGRESSIVE TAX PREPARATION with the address on the account of 1960 N. Frontage Rd, Clinton, Mississippi ("**BANK ACCOUNT #2**"). |

7. The Defendant Property was seized by the IRS on August 7, 2024, pursuant to a federal seizure warrant. As set forth in the seizure warrant, probable cause exists to believe that


EXHIBIT A

the Defendant Property, which had been held in the two Cadence Bank accounts, constituted the evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1341 (Mail Fraud), 1349 (Conspiracy to Commit Mail Fraud), 1956(a)(1) (Money Laundering) and 1957 (Money Laundering – Spending Statute) and that, therefore, the Defendant Property is forfeitable pursuant to 18 U.S.C. §§ 981 and 982 and 28 U.S.C. § 2461(c).

## BACKGROUND AND CONTEXT

### The Internal Revenue Service and Filing of Tax Returns

8. The IRS governs and administers federal income taxation. Federal income tax filing requirements apply even if an individual does not owe tax and is seeking a refund.

9. Taxpayers who earn their income in the form of wages from an employer will typically receive a Form W-2 (Wage and Tax Statements, hereafter, "W-2") at the beginning of the next calendar year and attach it to their tax return. When used lawfully, a taxpayer's W-2 summarizes the amount of income earned and the amount of withholding credits (the amount of tax withheld by the taxpayer's employer throughout the tax year) for the respective year, among other information. Just after the end of each tax year, employers are also required to file a copy of each employee's W-2 with the Social Security Administration ("SSA"). The SSA in turn reports the W-2 information to the IRS. As a result, the IRS can then compare the W-2 filed by the employer with the W-2 earnings reported by the taxpayer.

10. Employers are required to report the total number of W-2s issued and the total amount of compensation and withholdings for all employees during a tax year on a Form W-3, Transmittal of Wage and Tax Statements ("Form W-3"), to the SSA.

11. Businesses file Form 941 to report federal income taxes, Social Security and Medicare taxes withheld from employees' wages, among other items to the IRS. This form is also used to calculate and report the employer's portion of Social Security and Medicare taxes



that they owe to the IRS. If the total deposits and credits exceed the employer's tax liability, the excess is issued to the employer in the form of a federal tax refund.

12. ERC was implemented as part of the CARES Act legislation and was extended under the America Rescue Plan. The ERC is a refundable tax credit for businesses that continued to pay employees wages while business operations were fully or partially suspended pursuant to a government order related to the COVID-19 pandemic or experienced a significant decline (*i.e.*, 50 percent) in gross receipts during the period of March 13, 2020, through December 31, 2021. The ERC is between 50-70% of qualified wages paid to employees and the amount is based on specific time periods as defined on the 2020 and 2021 Forms 941. The credit reduces the employer's tax liability, and any payments or credits that exceed the employer's tax liability are to the employer as a tax refund.

13. The Families First Coronavirus Response Act ("FFCR Act") required certain employers to provide employees with paid sick leave of up to 80 hours and expanded family and medical leave of up to 10 weeks for specified reasons related to COVID-19. The FFCR Act provides refundable tax credits that reimburse eligible employers for the cost of providing paid sick and family leave wages to employees for leave related to COVID-19. Eligible employers can reduce their share of Social Security and/or Medicare tax deposits by the amount of their anticipated SFLC on Form 941. The SFLC wages must have been paid to employees for qualified sick or family leave taken after March 31, 2020 and before October 1, 2021.

14. False information submitted to the IRS produces a fraudulent tax return, which may result in a false claim for a tax refund. A false claim can then cause the IRS to issue a tax refund by either wire transferring the funds directly into the taxpayer's bank account, mailing the taxpayer a U.S. Treasury check, or mailing the taxpayer a prepaid stored value card. Refunds resulting from the filing of a Form 941 are generally mailed through USPS.


**EXHIBIT A**

15. Taxpayers can file their income tax returns by mail, by telephone, or electronically over the Internet. To file electronically, a taxpayer may purchase software, available at retail stores or online, or hire the services of a tax return preparer.

16. Many taxpayers use a paid Return Preparer to prepare and file their tax returns, and many taxpayers and Return Preparers file the tax returns electronically.

17. To file electronically, the taxpayer or preparer needs internet access. Electronically filed returns are typically processed faster than paper returns. For instance, taxpayers who electronically file their returns can get their refund in as little as 10 days through direct deposit. A taxpayer who files a paper return, on the other hand, usually must wait two to eight weeks to receive a refund.

## FACTS AND CIRCUMSTANCES

18. IRS-CI began conducting a criminal investigation of HARPER in April 2023. Evidence developed in this investigation indicates HARPER appears to have knowingly and willfully participated in a scheme to have false Forms 941 prepared and submitted to the IRS for her business for the sole purpose of obtaining federal tax refunds. HARPER's scheme to defraud the IRS caused the USPS to deliver seven fraudulently obtained refund checks for the 2020 and 2021 tax years, in violation of 18 U.S.C. § 1341. The materially false items on the Forms 941 are the refundable ERC and SFLC. Because HARPER is a tax preparer, there is probable cause to believe HARPER knew she did not qualify for the ERC or SFLC.

19. HARPER owns and operates a small-scale tax preparation business, PTP, from her home in Clinton, Mississippi. PTP was established with the IRS around 2005 and has a Form 941 filing requirement. HARPER did not file any Forms 941 for PTP prior to the first quarter of 2020 and did not file a corporate tax return for any previous tax periods. On June 6, 2024, HARPER told IRS-CI Special Agents she was present when Allison Guinn ("Guinn") filed

6



Forms 941 for the second, third, and fourth quarters of 2020 and all four quarters for 2021 on her behalf. Guinn used HARPER's laptop to file the Forms 941 while at HARPER's beauty shop. All Forms 941 claimed substantial ERC and SFLC, resulting in a total credit of $1,318,707.79. Of that amount, HARPER was issued seven refunds totaling $1,302,915.78. All of the Forms 941 for these quarters appear to be fraudulent as they claim high wages and no tax liability, ultimately maximizing the refund amount.

20. The refund checks were made payable to CHERA HARPER/PROGRESSIVE TAX PREPARATIONS. HARPER deposited each of the refund checks into her bank accounts at Cadence Bank.

| Date Form 941 Filed | Tax Prd | Refund Claimed Per Form 941 | Refund Issued: | Refund Issue Date: | Refund Check Deposit Date | Refund Deposit Account | Refundable Qualified Sick & Family Leave Wages Claimed | ERC Claimed | Wages Claimed per Form 941 | Num Of Employees per Return | Federal Income Tax Withheld | Forms W-2 received by IRS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/22/2022 | 202006 | $ (86,127.73) | $ 83,909.53 | 09/20/2022 | 10/04/2022 | Bank Acct #3 | $ 75,227.91 | $ 19,122.50 | $ 38,245.00 | 4 | $ - | 0 |
| 08/22/2022 | 202009 | $ (136,351.85) | $ 132,840.14 | 09/27/2022 | 10/04/2022 | Bank Acct #3 | $ 119,095.95 | $ 30,273.50 | $ 60,547.00 | 7 | $ - | 0 |
| 08/22/2022 | 202012 | $ (203,869.06) | $ 198,618.46 | 09/20/2022 | 10/04/2022 | Bank Acct #3 | $ 178,068.59 | $ 45,264.00 | $ 90,528.00 | 10 | $ - | 0 |
| | | | | | | | | | $ 189,320.00 | | | |
| 08/25/2022 | 202103 | $ (194,713.33) | $ 204,560.17 | 09/27/2022 | 10/04/2022 | Bank Acct #3 | $ 156,199.48 | $ 55,587.00 | $ 79,410.00 | 10 | $ - | 0 |
| 08/29/2022 | 202106 | $ (219,515.30) | $ 214,322.85 | 10/04/2022 | 10/11/2012 | Bank Acct #3 | $ 176,095.67 | $ 62,667.50 | $ 89,525.00 | 9 | $ - | 0 |
| 09/06/2022 | 202109 | $ (292,238.40) | $ 287,271.18 | 10/11/2022 | 03/20/2023 | Bank Acct #2 | $ 259,409.61 | $ 50,000.00 | $ 85,642.00 | 10 | $ - | 0 |
| 09/06/2022 | 202112 | $ (185,892.12) | $ 181,393.45 | 10/04/2022 | 10/11/2022 | Bank Acct #3 | $ 152,568.39 | $ 48,875.32 | $ 77,564.00 | 10 | $ - | 0 |
| | | | | | | | | | $ 332,141.00 | | | |
| | | $ (1,318,707.79) | $ 1,302,915.78 | | | | $ 1,116,665.60 | $ 311,789.82 | $ 521,461.00 | | $ - | |

Table 1- Summary of Forms 941, Tax Refunds, Tax Refund Deposits, and claimed COVID-19 Credits

21. PTP has not issued 2020 or 2021 W-2s to HARPER or any employees. PTP did not report wage information to the SSA on Forms W-3 for 2020 or 2021. Normally, an operating business with a Form 941 filing requirement would file W-2s with the IRS on behalf of their employees, as well as Forms W-3 with the SSA.



22. A third Cadence bank account ending in 5929, held in the name of PROGRESSIVE TAX PREPARATIONS, ("BANK ACCOUNT #3"), was opened with a $50 cash deposit on October 4, 2022. The only other deposits in the account were six of the refund check deposits on made on October 4 and October 11, 2022. On November 29, 2022, at 1:49 p.m., HARPER withdrew $150,000 cash from BANK ACCOUNT #3 and deposited $100,000 approximately one minute later into **BANK ACCOUNT #1.** HARPER closed BANK ACCOUNT #3 on February 24, 2023, and transferred the remaining funds into **BANK ACCOUNT #2**.

23. HARPER was interviewed on June 3, 2024, and stated she was present during the preparation of the Forms 941. The person that prepared the PTP Forms 941, Guinn, told HARPER she could file Forms 941 to get money back because HARPER had been impacted by COVID. HARPER did not supply Guinn with employee wage amounts and the wage amounts on the Forms 941 were false. HARPER said she only told Guinn the number of employees she had.

24. The PTP 2020 and 2021 Forms 941 filed by HARPER claimed PTP paid $521,461 in wages, claimed $311,789.82 of the ERC and $1,116,665.60 of the SFLC. As stated above, IRS databases do not have a record of PTP filing Forms W-2 for employees for the 2020 or 2021 tax years. There is no evidence that PTP even had employees during the 2020 or 2021 calendar years. No other taxpayers have filed Forms 1040 under PTP's Employer Identification Number ("EIN"). Based on this information, PTP was not eligible for the refundable ERC or SFLC for the 2020 or 2021 tax years.

25. PTP does not have a corporate tax return filing requirement. A business's gross receipts and income would typically be reported to the IRS on a Schedule C filed with the owner's Form 1040. HARPER did not report earning income from PTP on either her 2020 or



2021 Forms 1040 and respective Schedules C, Profit or Loss From Business ("Schedule C"). She did not file a Schedule C for PTP. The Schedules C filed for 2020 and 2021 were in the name of Harpers Beauty Salon and the same EIN used to file the Forms 941 for PTP. The 2020 Schedule C claimed wage expenses of $480; the 2021 Schedule C claimed none.

26. Additionally, the IRS databases did not report any Form 1099 non-employee compensation paid to any PTP workers during the period of ERC eligibility, March 13, 2020, through December 31, 2021.

### CHERA L. HARPER - BANK ACCOUNT #1

27. HARPER's bank account, **BANK ACCOUNT #1,** was opened with two cash deposits, of $150 and $5,000, on November 8, 2022. The next deposit was on November 29, 2022, of $100,000 at approximately 1:50 p.m., one minute after HARPER withdrew $150,000 cash from BANK ACCOUNT #3. The $150,000 withdrawal from BANK ACCOUNT #3 was sourced from two deposits of six PTP Form 941 refund checks deposited on October 4, 2022, and October 11, 2022, totaling $1,010,644.60. BANK ACCOUNT #3 did not receive any additional deposits between October 11, 2022, and the day of the $150,000 withdrawal. The remaining $50,000 was deposited into a Cadence Bank account held in the name of Karl Epps ("Epps"), believed to be HARPER's partner, at approximately 1:51 p.m. Subsequent deposits included interest earned on the account, and a $26,561.40 deposit which was a portion of the CD that HARPER purchased with the third quarter 2021 Form 941 refund and cashed out on November 17, 2023. The remaining funds from that refund were deposited into **BANK ACCOUNT #2** on March 20, 2023. As of the last date of bank records supplied by Cadence Bank, pursuant to a Grand Jury subpoena, the ending balance in **BANK ACCOUNT #1** on March 25, 2024, was $28,492.79.



28. Debits to the account consisted of transfers to other accounts at Cadence Bank controlled by HARPER or her joint account with Epps, and cash withdrawals.

### CHERA L HARPER DBA PROGRESSIVE TAX PREPARATION – BANK ACCOUNT #2

29. **BANK ACCOUNT #2** was opened on February 24, 2023, with a $89,737.35 deposit sourced from the $105,737.35 account-closing withdrawal from BANK ACCOUNT #3. HARPER withdrew $16,000 cash from the transaction and deposited the cash into Cadence Bank account X1529, held in the name of CHERA L. HARPER. The next deposit to **BANK ACCOUNT #2** was of $237,271.18, on March 20, 2023. This was sourced from the 2021 third quarter PTP refund check in the amount of $287,271.18. The remaining $50,000 was used to purchase a CD at Cadence Bank the same day. That CD was later withdrawn on November 17, 2023, with a portion of the funds deposited into **BANK ACCOUNT #1** and the remaining $25,000 deposited into HARPER's Cadence Bank account X3534, which has since been depleted.

30. The majority of the funds in **BANK ACCOUNT #2** were depleted by cash withdrawals.

31. As of the last date of bank records supplied by Cadence Bank, pursuant to a Grand Jury subpoena, the ending balance in **BANK ACCOUNT #2** on February 29, 2024, was $3,077.82.



| BANK ACCOUNT #3 - PROGRESSIVE TAX PREPARATION | | Date | Description | Notes: | Debits | Credits |
|---|---|---|---|---|---|---|
| 7936-529-2 | Progressive Tax Preparation | 10/04/2022 | Refund Checks Deposited for Q2, Q3, Q4 2020, Q1 2021 | Less Cash | $ (5,000.00) | $ 614,928.30 |
| 7936-529-2 | Progressive Tax Preparation | 10/11/2022 | Refund Checks Q2, Q4 2021 | | | $ 395,716.30 |
| 7936-529-2 | Progressive Tax Preparation | 11/29/2022 | CHECKING WITHDRAWAL | | $ (150,000.00) | |
| 7936-529-2 | Progressive Tax Preparation | 02/24/2023 | Withdrawal | Acct Closing | $ (105,737.35) | |
| | | | | | | $ 1,010,644.60 |
| **BANK ACCOUNT #1 CHERA L. HARPER** | | | | | | |
| 85900012013215 | Chera L Harper | 11/29/2022 | Porton of Withdrawal from Acct #3 | Cash FROM 11/29/22 | | $ 100,000.00 |
| 85900012013215 | Chera L Harper | 11/17/2023 | DEPOSIT - Cashed CD $50,000 | Portion of CD 11/17/23 | | $ 26,561.40 |
| | | | | Proceeds of Mail Fraud Subject to Seizure | | $ 126,561.40 |
| **BANK ACCOUNT #2 CHERA L. HARPER DBA PROGRESSIVE TAX PREPARATION** | | | | | | |
| 81767220 | Chera L. Harper DBA Progressive Tax Preparation | 02/24/2023 | Opening Deposit $105,737.35 from Acct #3 less $16,000 cash = $89,737.35 | Deposit Less Cash | $ (16,000.00) | $ 89,737.35 |
| 81767220 | Chera L. Harper DBA Progressive Tax Preparation | 03/20/2023 | Refund Check Q3 2021 & CD | Deposit Less CD | $ (50,000.00) | $ 237,271.18 |
| | | | | Proceeds of Mail Fraud Subject to Seizure | | $ 327,008.53 |

Table 2: Summary of Transactions in Accounts – (color-coded to show transactional relationships)

## CONCLUSION

32.     Based on the above facts and circumstances set forth in this declaration, I submit that I have a reasonable belief that the United States will be able to meet its burden of proof in establishing that the Defendant Property is subject to civil forfeiture, pursuant to 18 U.S.C. §§ 981, on the grounds that the funds constitute or are derived from proceeds traceable to and/or were involved in violations of 18 U.S.C. §§ 1341 (mail fraud), 1349 (mail fraud conspiracy), 1956 (money laundering), and 1957 (money laundering–spending statute).

**EXHIBIT A**

33. I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this 23rd day of August 2024,

*Amber Luker*
Amber Luker
Special Agent
IRS- Criminal Investigation

